## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMPUS DOOR HOLDINGS INC. | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | : CASE NO: |
| | : |
| | : |
| SIXUP LENDING LLC; SIXUP PBC, | : |
| INC.; SUNWOO HWANG; AUGUSTINE | : |
| BUI; MARK JENNINGS; PETER | : |
| COLEMAN; RICHARD YANG; ABC | : |
| COMPANIES 1-15; and JOHN DOES 1-15 | : |
| *Defendants*. | : |
| | : |

## COMPLAINT

Plaintiff Campus Door Holdings Inc. ("Plaintiff" or "CDH"), by and through its undersigned counsel, hereby submits the following Complaint against Defendants SixUp Lending LLC, SixUp PBC, Inc. (collectively "SixUp"), Sunwoo Hwang, Augustine Bui, Mark Jennings, Peter Coleman, Richard Yang, and Ken Jones (the "Individual Defendants") (collectively, "Defendants") and, in support thereof, avers as follows:

### NATURE OF THE ACTION

1.      This dispute arises out of Defendants' long-running pattern of fraudulent misrepresentations and omissions made to CDH causing a $1,000,000-plus debt to accumulate, Defendants' acknowledgement of the debt and that it was due and owing, and Defendants' repeated empty promises regarding repayment of, and ability to repay, this debt. The parties' relationship involved CDH's origination of student loans and Defendants' funding of same using money from an account to which CDH was granted access. Defendants funded this account with money from third party investors. As early as July 2019, Defendants were on notice that CDH intended to

sweep the account in January 2020 to obtain the second half of a tranche of loan disbursements originally booked in 2019. At that time and continuing through immediately before the sweep, Defendants knew that the account would not have sufficient funds to pay this amount when it came due, but repeatedly failed to advise CDH of this anticipated shortfall. It was not until CDH uncovered Defendants' fraud with regard to the underfunded account and paid the disbursement on Defendants' behalf that Defendants finally acknowledged the fraud and agreed to repay the debt to CDH in installments. Defendants paid two initial installments of the balance due but subsequently, as is their apparent modus operandi, refused to live up to their promises and ceased compliance with the payment plan. This scheme involved significant fraud on behalf of SixUp and its corporate leadership – namely, Defendants knew, months before the shortfall occurred, that their account lacked sufficient funds. This scheme by Defendants is particularly galling given SixUp's stated mission and role as a lender serving underprivileged and underserved student populations who otherwise would not be able to afford access to higher education. CDH has come to understand that SixUp possessed the funds, loaned by another investor, to cover this amount, but diverted those funds to other purposes. Further, once Defendants ultimately acknowledged their obligation to repay the debt, they continued to string CDH along with empty promise after empty promise, in a desperate attempt to salvage the lending relationship with CDH. It is undisputed that Defendants owe CDH the remaining payments of the $1,000,000-plus debt. Left with no other recourse, CDH now brings claims against Defendants to stop their fraudulent scheme, once and for all.

## PARTIES

2.     Plaintiff is a corporation with its principal place of business at 1415 Ritner Highway, Carlisle, Pennsylvania 17013.

3.      Upon information and belief, SixUp Lending LLC is a Delaware limited liability company with its principal place of business at 77 Van Ness Avenue, Suite 101, MS-1223, San Francisco, California 94102.

4.      Upon information and belief, SixUp PBC, Inc. is a Delaware public benefit corporation with its principal place of business at 77 Van Ness Avenue, Suite 101, MS-1223, San Francisco, California 94102.

5.      Upon information and belief, the mission of both SixUp PBC, Inc. and SixUp Lending LLC is to provide a path for low-income, first-generation college students to afford higher education.

6.      Indeed, as a public benefit corporation, SixUp PBC, Inc. is a for-profit business that has a stated "public interest" purpose set out in its certificate of incorporation to allow for a purpose beyond maximizing profit for stockholders, and is required to use at least some of its corporate resources to promote its stated public benefit, in this case, providing funding to assist underprivileged students with affording higher education.

7.      Upon information and belief, Hwang, the Chief Executive Officer and President of SixUp PBC, Inc., is an individual domiciled in the State of California.

8.      Upon information and belief, Bui, Executive Vice President of Operations, Servicing and Growth at SixUp PBC, Inc., is an individual domiciled in the State of California.

9.      Upon information and belief, Jennings is an employee of SixUp PBC, Inc. and is domiciled in the State of California.

10.      Upon information and belief, Coleman, Vice President of Finance at SixUp PBC, Inc., is an individual domiciled in the State of California.

11.     Upon information and belief, Yang, Vice President of Credit and Lending Operations at SixUp PBC, Inc., is an individual domiciled in the State of California.

## JURISDICTION AND VENUE

12.     Jurisdiction in this Court is appropriate pursuant to 28 U.S.C. § 1332(a)(1), as the Plaintiff is a citizen of Pennsylvania while all Defendants are citizens of California, and the amount in controversy exceeds $75,000.

13.     Venue is proper in this Court because a substantial part of the acts and events giving rise to the claims occurred in this District.

14.     Specifically, Plaintiff's principal place of business is in this District and Defendants conduct business in this District.

15.     Further, the transactions and communications giving rise to this action occurred, at least in part, in this District.

## FACTUAL BACKGROUND

### A. The Parties' Loan Funding Agreement

16.     Pursuant to an agreement between the CDH and SixUp,[1] CDH originated certain student loans, and Defendants funded these loans (the "Loan Funding Process").

17.     In the Loan Funding Process, CDH would first originate a batch of loans.

18.     Then, CDH would provide Defendants with notice of the origination and the total amount of the batch of loans.

---

[1] The initial agreement was between CDH and SixUp PBC, Inc. The agreement was subsequently amended to substitute SixUp Lending LLC for SixUp PBC, Inc. In this Complaint, the term "SixUp" shall refer collectively to SixUp PBC, Inc. and SixUp Lending LLC.

19.     Upon information and belief, at various points in time, SixUp would obtain commitments from investors to ensure that SixUp had the money to fund the batch of loans pending disbursements.

20.     Three (3) days prior to the date on which CDH intended to access SixUp's bank account (the "Account") to obtain the money to fund the loans, CDH would again provide notice to Defendants of this imminent access, including the precise amount of funding required for the entire batch of loans.

21.     CDH would then access the Account to obtain the funds, and those funds would then be disbursed to the various schools to which they were owed.

22.     The Loan Funding Process would occur as needed throughout the academic year, with most funding occurring when tuition payments are due in August, September, December, and January.

23.     In tracking these semester-driven cycles, some instances of the Loan Funding Process involve two (2) disbursements – namely, CDH pulls funds associated with the initial disbursement of a loan during the summer Loan Funding Process, and then repeat the process, for the second disbursement of the loan, during the winter Loan Funding Process.

24.     In such instances, Defendants would be on notice, as of the summer Loan Funding Process and the funding of the initial / summer disbursement, that they were obligated to ensure that additional funds would be the Account in time to cover the second / winter disbursement.

25.     Additionally, CDH's policy was to provide Defendants with an additional three (3) days' notice any time it planned to access the Account.

**B.  The Transaction Giving Rise To This Action**

26.     In the Loan Funding Process instance that gave rise to this action, CDH originated a batch of 208 loans, the vast majority of which constituted the second of two (2) disbursements, totaling approximately $1,142,242.

27.     Specifically, in July 2019, CDH originated 198 of the 208 loans in question and the initial disbursement of these 198 loans was made in the summer of 2019.

28.     Because 198 of the 208 loans involved two (2) disbursements, Defendants were on notice that, for these 198 loans, 1) CDH would access their account twice, once for the summer disbursement and again for the winter disbursement; and 2) SixUp was required, at the time of the winter disbursement, to have a sufficient balance in the Account to fund same.

29.     In July 2019, CDH provided Defendants with three (3) days' notice of their intent to access the Account for the initial disbursement.

30.     CDH accessed the Account and obtained the funds in order to fund the initial disbursement in the Loan Funding Process.

31.     At the time of the initial disbursement in summer of 2019, Defendants were aware that CDH would access the Account at a later time, for the second, winter disbursement related to the 198 loans, in the amount of $1,066,500 (the "Second Disbursement").

32.     Specifically, CDH provided Defendants with information regarding the pending Second Disbursement commitment on a daily basis during the summer of 2019.

33.     Defendants accessed this information, and were aware that certain disbursements from the summer of 2019 were associated with the pending Second Disbursement.

34.     Upon information and belief, Defendants were aware that the Account would not have sufficient funds to fund the Second Disbursement, but for months, failed to advise CDH of this anticipated shortfall.

35.     In December 2019, Defendants received notice that CDH would access the Account in January 2020, to withdraw the Second Disbursement.

36.     In January 2020, CDH prepared to fund the Second Disbursement, and provided Defendants the customary three (3) days' notice of its intent to access the Account to make the withdrawal of this sum.

37.     In January 2020, Defendants again received notice that CDH intended to access the Account to withdraw the Second Disbursement.

38.     Still, Defendants failed to advise CDH of their inability to pay.

39.     Critically, in this instance, the funds in the Account, which were earmarked for CDH's access, were funds lent to Defendants by Goldman Sachs, a warehouse lender with whom SixUp had an ongoing investment relationship.

40.     Upon information and belief, SixUp borrowed these funds from Goldman Sachs after CDH provided notice that it would access the Account to withdraw the Second Disbursement for the specific purpose of funding the loans.

41.     Goldman Sachs funded both the initial disbursement and Second Disbursement in September 2019.

42.     Accordingly, as of September 2019, the money from Goldman Sachs, intended to fund the Second Disbursement, was in the Account or should have been in the Account.

43.     At some point between September 2019 and January 2020, SixUp removed these funds from the Account.

44.     Indeed, in January 2020, CDH accessed the Account only to discover that there were no funds in the Account with which to fund the Second Disbursement.

45.     The very close timing of Defendants' knowledge of CDH's impending access, and the access itself, demonstrates that SixUp either did not have a sufficient balance in the Account to fund the Second Disbursement and/or had moved funds from the Account such that the Account was empty when CDH accessed it to withdraw the Second Disbursement.

46.     Defendants knew in mid-2019 that they were obligated to have funds in the Account sufficient to fund the Second Disbursement.

47.     Defendants knew, when CDH provided notice of their intent to access the Account to fund the Second Disbursement of the Loan, that there were no funds in the Account.

48.     At no time did Defendants advise CDH of their inability to fund the Second Disbursement, or of the shortfall in the Account, instead fraudulently omitting to keep CDH informed of Defendants' inability to pay.

49.     Individual Defendants knew or should have known, as of mid-2019 1) that the Second Disbursement was due to be paid in January 2020, and 2) that Defendants would not be able to pay same, but omitted to advise CDH of same.

50.     Instead, Individual Defendants actively participated in this scheme by directly communicating with CDH regarding the Account, the Loan, and the Second Disbursement but failing to advise CDH of the issues with same.

51.     Specifically, from the summer of 2019 through January 2020, Individual Defendants actively misrepresented information about the ability of the Account to fund the Second Disbursement, and omitted to advise CDH of material information regarding same.

52.     Even when CDH provided Defendants with the three (3) days' notice of its intent to access the Account to obtain the Second Disbursement, all Defendants were silent regarding their knowledge of the Account's shortfall.

53.     Instead, Defendants fraudulently misrepresented to CDH that the Account had a sufficient balance to fund the Second Disbursement.

54.     As a result of Defendants' failure to fund the Second Disbursement, CDH was forced to spend its own funds to make disbursements to the schools on SixUp's behalf, thereby preserving SixUp's business and reputation as a lender with the schools.

55.     Because CDH spent its own funds in this way, Defendants incurred a debt to CDH for the Second Disbursement totaling approximately $1.1 million (the "Debt").

## C. Defendants' Acknowledgement Of The Debt And Fraudulent Promises To Repay Same

56.     On or about January 7, 2020, CDH advised Defendants that the Debt was not in the Account.

57.     On January 24, 2020, in response to CDH's request for a funding update, Hwang advised that one of SixUp's investors had increased their funding commitment and that Hwang was in the process of confirming additional details.

58.     On or about March 11, 2020, Defendants provided the first of many acknowledgments that they owed the Debt to CDH.

59.     On or about March 11, 2020, in order to afford the parties time to work out the details of SixUp's repayment of the Debt, the parties entered into a Forbearance Agreement pursuant to which CDH agreed not to take any legal action with regard to the Debt until at least April 8, 2020.

60.     In late March through early April 2020, the parties, including Individual Defendants, attempted to cooperate in fashioning a repayment plan pursuant to which Defendants would repay the Debt.

61.     Again, Individual Defendants knew or should have known that SixUp was unable and/or unwilling to repay the Debt but omitted to advise CDH of same.

62.     Instead, Individual Defendants directly participated in this fraud by extensively communicating, orally and in writing, regarding Defendants' repayment of the Debt.

63.     On February 5, 2020 and again on February 9, 2020, Hwang alleged that he was working diligently with SixUp's investors to secure additional funding to pay the Debt.

64.     On February 18, 2020, Coleman reiterated that "the team is working hard, should have something more before the end of the week."

65.     On February 22, 2020, Coleman requested an updated total of the precise amount of Debt owed.

66.     On March 10, 2020, Bui again acknowledged the Debt.

67.     On March 11, 2020 Hwang expressed gratitude for CDH's patience and assured CDH he would to "continue doing everything [he could] to right-size [SixUp] in the best interest of our creditors, stakeholders and our students."

68.     On March 24, 2020, Hwang again stated that, once SixUp secured additional funding, Bui would resume discussions about the Debt repayment plan with CDH.

69.     Defendants misled CDH in this way until mid-April 2020, when Individual Defendants stopped responding to CDH's communications.

70.     On April 16, 2020, Hwang again advised that SixUp was waiting on funding, and requested a few additional days within which to update CDH on SixUp's plans to repay the Debt.

71.     Upon information and belief, in late April 2020, Defendants retained some new corporate leadership, including Jennings, who resumed communications with CDH.

72.     In late April 2020, Defendants again promised to repay the Debt in full.

73.     In an April 24, 2020 email, Bui reiterated that SixUp was working hard to secure funding in order to repay the Debt.

74.     On or about April 27, 2020, Jennings promised that SixUp would start repayment of the Debt, beginning with an installment of $175,000 in late April 2020, and followed by an additional installment payment of up to $175,000 by the end of May 2020.

75.     On April 28, 2020, Jennings again acknowledged the Debt owed and promised that SixUp would pay the first $175,000 installment of the Debt.

76.     On or about April 28, 2020, Defendants yet again acknowledged the money owed by repaying approximately $100,000 of the Debt.

77.     On April 28, 2020, Jennings advised that he was unable to get approvals for the additional $75,000 of the installment but that it would be wired in the coming days.

78.     SixUp did not wire the additional $75,000 within the next few days.

79.     In a further attempt to offset the Debt, CDH withheld approximately $79,002 in refund payments[2] and Defendants consented to this setoff/offset, further acknowledging the Debt and reaffirming their promise to repay the Debt in full.

80.     On or about May 6, 2020, Defendants again acknowledged the money owed by repaying an additional $60,000 of the Debt.

81.     Defendants spent the remainder of May and June 2020 disingenuously deceiving CDH about their intention to repay the remaining debt.

---

[2] These payments would be refunded to CDH by schools for those portions of the loans that represented "overpayment" of same, and CDH would in turn customarily refund same to Defendants.

82.     On May 15, 2020, CDH participated in a telephone call with, *inter alia*, Bui, Yang, Jennings, and SixUp's counsel, Edward Grenville, to discuss SixUp's repayment of the Debt.

83.     CDH requested more detail regarding SixUp's corporate structure and assets to ensure that SixUp would eventually repay the Debt.

84.     Bui described SixUp's financial situation, including failed capital raises, and emphasized SixUp's philanthropic mission.

85.     Jennings advised that the initial $160,000 payment would demonstrate SixUp's good faith efforts to repay the Debt and further advised that SixUp would be able to pay more of the Debt once it closed additional rounds of funding.

86.     On this call, Defendants advised of Goldman Sachs' involvement with the funding,

87.     Defendants further advised that the Debt was owned by Goldman Sachs, and that all of SixUp's assets were pledged to other parties.

88.     CDH requested a secured note regarding the Debt, and Defendants, though they again confirmed that they owed the Debt, advised that SixUp lacked collateral for such a note.

89.     CDH proposed additional installment payments, and Jennings advised that Defendants would caucus internally and provide a repayment proposal.

90.     In a May 15, 2020 email, Bui again expressed the goal of closing an additional round of funding so that the Debt could be resolved.

91.     On May 20, 2020, at Defendants' request, CDH provided a reconciliation of the Debt.

92.     On May 26, 2020, Defendants again acknowledged that they owed the Debt, and Grenville provided SixUp's written repayment proposal including the precise amount of Debt owed (the "Repayment Proposal").

93.     Among other things, the Repayment Proposal stated that SixUp "agrees to repay the *remaining outstanding amount of $956,972*" to Plaintiff (emphasis added), thereby further acknowledging and agreeing both the amount of the Debt and that it was due and owing to CDH. A true and correct copy of the Repayment Proposal is attached hereto as Exhibit A.

94.     On that same day, Defendants verbally reiterated that secured lending was not feasible due to their capital structure and CDH, for its part, stated it would not agree to a repayment plan that was contingent on Defendants' future, open-ended capital raises.

95.     In a June 7, 2020 email, Grenville again acknowledged the total principal amount of the Debt and SixUp's liability for same.

96.     When CDH requested that the repayment terms be documented in an unsecured note, Defendants refused.

97.     Since that time, Defendants have failed to make any other payments to offset the Debt.

## COUNT I - ACCOUNT STATED
### Plaintiff v. SixUp PBC, Inc. and SixUp Lending LLC

98.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

99.     SixUp owes the Debt to CDH, which arose from a preexisting account or course of dealing between the parties.

100.     CDH made demand for payment of the Debt from SixUp and presented a reconciliation of the amount due to SixUp.

101.     SixUp has acknowledged the account stated between the parties on multiple occasions.

102.    Defendants' acceptance of the account stated between the parties is evidenced by SixUp's issuance two (2) payments to CDH, made for the purpose of offsetting the Debt, without complaint or dispute, in the amount of $160,000, SixUp's multiple other acknowledgments of the Debt, as well as its preparation and circulation of the Repayment Proposal.

103.    Said payments and the written Repayment Proposal are an acknowledgment of the Debt and constitute an "account stated", foreclosing any dispute over the amounts due.

104.    CDH has demanded payment of the remaining balance of the Debt from Defendants on the account.

105.    Defendants have failed and refused to make payments on the account.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants SixUp PBC, Inc. and SixUp Lending LLC in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT II – BREACH OF IMPLIED CONTRACT
### Plaintiff v. SixUp PBC, Inc. and SixUp Lending LLC

106.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.    An implied contract existed between the parties whereby the parties agreed that Defendants would pay the Debt.

108.    In exchange for Defendants' promise to repay the Debt, CDH, via the Forbearance Agreement, agreed not to bring suit for the Debt.

109.    The implied contract arose from the course of conduct between the parties, namely the parties' execution of the Forbearance Agreement, SixUp's partial repayment of the Debt, the

extended dialogue between the parties' regarding SixUp's repayment of the Debt, and SixUp's preparation and circulation of the Repayment Proposal.

110.     SixUp breached the parties' implied contract when it refused to pay the balance of the Debt.

111.     As a result of SixUp's breach, CDH has suffered damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants SixUp PBC, Inc. and SixUp Lending LLC in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

### COUNT III – UNJUST ENRICHMENT
### Plaintiff v. SixUp PBC, Inc. and SixUp Lending LLC

112.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

113.     CDH conferred a benefit on SixUp by paying, out of its own funds, the second disbursement of the Loan, which SixUp had promised to pay.

114.     Without this benefit, SixUp would not have been able to preserve its reputation and remain in business.

115.     Without this benefit, the 208 loans would not have been paid and SixUp would not have been able to derive financial benefits, such as fees, in connection with the loans.

116.     Accordingly, SixUp incurred the Debt to CDH.

117.     CDH also conferred a benefit on SixUp by temporarily forgoing its right to bring suit against SixUp regarding the Debt, via CDH's execution of the Forbearance Agreement.

118.    SixUp has enjoyed and retained the value of the benefit conferred by CDH, namely it has retained the funds which it owes to CDH, without penalty, and has maintained its business relationship with CDH.

119.    SixUp accepted and retained the benefits conferred upon it by CDH under circumstances which render it inequitable for SixUp to retain the benefit without payment to CDH of the value of the benefit.

120.    In fairness and good conscience, it would be unjust and inequitable for SixUp to retain the foregoing value at the expense and detriment of CDH.

121.    CDH has no adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants SixUp PBC, Inc. and SixUp Lending LLC in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT IV - PROMISSORY ESTOPPEL
### Plaintiff v. SixUp PBC, Inc. and SixUp Lending LLC

122.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

123.    Defendants engaged in conduct with respect to CDH that Defendants knew, or reasonably should have known, would induce CDH to, among other things, continue its business relationship with SixUp, namely the making of various misrepresentations about the funding of the Account and the Debt.

124.    Further, when such misrepresentations came to light, Defendants acknowledged and promised to repay the Debt.

125.    Defendants made the promises with the expectation that Plaintiff would rely upon them.

126.    CDH reasonably, justifiably, and foreseeably relied upon Defendants' promises by executing the Forbearance Agreement and continuing to do business with SixUp.

127.    Defendants failed to keep their promises.

128.    Injustice can be avoided only by enforcing Defendants' promise to CDH that SixUp will repay the Debt because absent such enforcement, CDH will be unfairly required to fund the Second Disbursement using its own money.

129.    Defendants' conduct was wrongful, without justification or excuse, and contrary to generally accepted standards of commercial conduct, good faith and fair dealing.

130.    CDH's reasonable, justifiable, and foreseeable reliance upon Defendants' promises has caused CDH damages, including, but not limited to, the value of the unrepaid Debt.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants SixUp PBC, Inc. and SixUp Lending LLC in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT V- CONVERSION
### Plaintiff v. SixUp PBC, Inc. and SixUp Lending LLC

131.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

132.    As set forth above, SixUp purposely and intentionally interfered with CDH's rights in its personal property by using the funds in the Account earmarked for the Second Disbursement as SixUp's own, without accounting to Plaintiff for this benefit.

133.    SixUp converted those funds for its own sole benefit.

134.    SixUp's intentional appropriation of funds which were CDH's property constituted an unlawful interference with CDH's right of possession over such property.

135.    SixUp's conduct has caused CDH to suffer pecuniary losses as set forth above, including, but not limited to, the value of the unpaid Debt, additional interest obligations, and internal hours and resources spent attempting to resolve the dispute with SixUp.

136.    Upon information and belief, as a result of SixUp's conduct, namely retention of the Second Disbursement to its own use and benefit, Individual Defendants received benefits, in the form of compensation and related pecuniary benefits.

137.    SixUp's conduct, namely retention of the Second Disbursement to its own use and benefit is wrongful, without justification or excuse, and contrary to generally accepted standards of commercial conduct, good faith, and fair dealing.

138.    By reason of the foregoing, CDH has suffered damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants SixUp PBC, Inc. and SixUp Lending LLC in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

### COUNT VI – FRAUD
### Plaintiff v. All Defendants

139.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

140.    As described above, Defendants repeatedly made false and misleading statements to CDH regarding SixUp's intention and ability to fund the Second Disbursement using the balance of the Account, and, following CDH's discovery that SixUp lacked funds to pay the Second Disbursement, regarding SixUp's intention and ability to repay the Debt to CDH.

141.    These false and misleading statements included, but were not limited to:

- A January 24, 2020 representation by Hwang that one of SixUp's investors had increased its funding commitment;

- A March 11, 2020 acknowledgment of the Debt and Defendants' commitment to working out the details of repayment of same;

- Statements made by Hwang on February 5, 2020 and February 9, 2020 that he was working diligently with SixUp's investors to secure additional funding to pay the Debt;

- A February 18, 2020 statement by Coleman that Defendants were working to secure funding to repay the Debt;

- A February 22, 2020 request by Coleman for the precise amount of Debt owed;

- A March 10, 2020 acknowledgment by Bui of the Debt owed;

- A March 11, 2020 statement by Hwang that he would to "continue doing everything [he could] to right-size [SixUp] in the best interest of our creditors, stakeholders and our students;"

- A March 24, 2020 statement by Hwang that, once SixUp secured additional funding, Bui would resume discussions about the Debt repayment plan with CDH;

- An April 16, 2020 statement by Hwang that SixUp was waiting on funding, and requesting for a few additional days within which to update CDH on SixUp's plans to repay the Debt;

- An April 24, 2020 statement by Bui that SixUp was working hard to secure funding in order to repay the Debt;

- An April 27, 2020 promise by Jennings that SixUp would begin to repay the Debt, beginning with an installment of $175,000 in late April 2020, followed by an additional installment payment of up to $175,000 by the end of May 2020;

- An April 28, 2020 promise by Jennings that SixUp would pay the first $175,000 installment of the Debt;

- Numerous statements on May 15, 2020 by Bui, Jennings, Yang, and SixUp's counsel regarding SixUp's repayment of the Debt, and assurances that SixUp would be able to pay more of the Debt once it closed additional rounds of funding;

- The May 26, 2020 Repayment Proposal; and

- A June 7, 2020 acknowledgment by SixUp's counsel of the total principal amount of the Debt and SixUp's liability for same.

142.    Additionally, from July 2019 through January 2020, Defendants had a duty to disclose the material fact that the Account lacked sufficient funds, and omitted to disclose same.

143.    Defendants made the misrepresentations either knowing that same were false, or acting with deliberate, reckless disregard as to whether they were true.

144.    The misrepresentations and omissions were material because they caused CDH to continue to do business with SixUp and to execute the Forbearance Agreement.

145.    Defendants made the misrepresentations to CDH with the intent to mislead CDH and to induce CDH to rely upon the misrepresentations.

146.    CDH reasonably and justifiably relied to its detriment on Defendants' misrepresentations and omissions of material facts by, among other things, continuing to do business with SixUp and executing the Forbearance Agreement.

147.    CDH would have ended its business relationship with SixUp and refused to execute the Forbearance Agreement if CDH had known Defendants' representations were false and/or known that Defendants had omitted to advise CDH of material facts regarding the Account, the Second Disbursement, and the Debt.

148.     Defendants' conduct was wrongful, without justification or excuse, and contrary to generally accepted standards of commercial conduct, good faith, and fair dealing.

149.     By reason of the foregoing, CDH has suffered damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT VII – NEGLIGENT MISREPRESENTATION
### Plaintiff v. All Defendants

150.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

151.     Defendants owed a duty to CDH to provide information that implicitly and explicitly provided information as to the Account, the Second Disbursement, and the Debt when it sought to induce CDH to continue its business relationship with SixUp and induce CDH to execute the Forbearance Agreement.

152.     Despite the fact that one of the fundamental purposes of the parties' relationship was Defendants' provision of information to CDH regarding the Account, loans like the Loan, and disbursements like the Second Disbursement, Defendants failed to inform CDH of the lack of funds in the Account and SixUp's inability to fund the Second Disbursement, despite knowing of these defects for months before the Second Disbursement was due to be withdrawn from the Account.

153.     Instead, Defendants made numerous statements to Plaintiffs that they knew, or should have known, were false and misleading, including, but not limited to:

- A January 24, 2020 representation by Hwang that one of SixUp's investors had increased its funding commitment;

- A March 11, 2020 acknowledgment of the Debt and Defendants' commitment to working out the details of repayment of same;

- Statements made by Hwang on February 5, 2020 and February 9, 2020 that he was working diligently with SixUp's investors to secure additional funding to pay the Debt;

- A February 18, 2020 statement by Coleman that Defendants were working to secure funding to repay the Debt;

- A February 22, 2020 request by Coleman for the precise amount of Debt owed;

- A March 10, 2020 acknowledgment by Bui of the Debt owed;

- A March 11, 2020 statement by Hwang that he would to "continue doing everything [he could] to right-size [SixUp] in the best interest of our creditors, stakeholders and our students;"

- A March 24, 2020 statement by Hwang that, once SixUp secured additional funding, Bui would resume discussions about the Debt repayment plan with CDH;

- An April 16, 2020 statement by Hwang that SixUp was waiting on funding, and requesting for a few additional days within which to update CDH on SixUp's plans to repay the Debt;

- An April 24, 2020 statement by Bui that SixUp was working hard to secure funding in order to repay the Debt;

- An April 27, 2020 promise by Jennings that SixUp would begin to repay the Debt, beginning with an installment of $175,000 in late April 2020, followed by an additional installment payment of up to $175,000 by the end of May 2020;

- An April 28, 2020 promise by Jennings that SixUp would pay the first $175,000 installment of the Debt;

- Numerous statements on May 15, 2020 by Bui, Jennings, Yang, and SixUp's counsel regarding SixUp's repayment of the Debt, and assurances that SixUp would be able to pay more of the Debt once it closed additional rounds of funding;

- The May 26, 2020 Repayment Proposal; and

- A June 7, 2020 acknowledgment by SixUp's counsel of the total principal amount of the Debt and SixUp's liability for same.

154.    Defendants made the misrepresentations either knowing that same were false, or acting with deliberate, reckless disregard as to whether they were true.

155.    Additionally, from July 2019 through January 2020, Defendants had a duty to disclose the material fact that the Account lacked sufficient funds, and omitted to disclose same.

156.    Defendants knew, as early as the summer of 2019, at the time of the initial disbursement, that SixUp would not have the funds in its Account to cover the Second Disbursement when it came due in January 2020.

157.    At no time did Defendants ever advise CDH that SixUp would be unable to fund the Second Disbursement, despite knowing for months the amount and due date of the Second Disbursement.

158.    Instead, Defendants failed to advise CDH of this anticipated shortfall in summer of 2019.

159.    Defendants again failed to advise CDH of this anticipated shortfall in December 2019, when they knew that CDH's access of the Account to remove the funds was imminent.

160.    Defendants again failed to advise CDH of this anticipated shortfall in January 2020, after CDH provided notice to Defendants it would access the Account three (3) days later to remove the Second Disbursement.

161.    Defendants either deliberately or negligently omitted this information from all communications with CDH.

162.    Defendants' misrepresentations and omissions are all the more egregious because Defendants knew, in mid-2019, that SixUp was obligated to pay the Second Disbursement in early 2019, and because CDH gave further notice regarding its intent to withdraw the Second Disbursement from the Account three (3) days before CDH accessed the Account to do so in January 2020.

163.    Moreover, once CDH discovered that the Account lacked funds to pay the Second Disbursement, Defendants acknowledged the SixUp failed to pay the Second Disbursement, acknowledged that SixUp owed the Debt, and then spent months disingenuously promising to repay the Debt.

164.    Defendants knew precisely of the problems with the Account for months, failed to inform CDH of these problems, and then either lied or negligently misrepresented that they intended to repay the Debt once it was incurred.

165.    To this day, Defendants still misrepresent, including but not limited to statements on their website, that they are a viable company and lending option.

166.    These misrepresentations and omissions remained uncured by Defendants, while Defendants all the while benefitted financially from their ongoing business relationship with CDH.

167.    Defendants made the false representations with the intent to induce CDH into continuing its business relationship with SixUp.

168.     Said representations would induce a reasonable party to continue a business relationship with SixUp and to execute the Forbearance Agreement.

169.     These representations were materially false when made.

170.     Under the circumstances, Defendants knew or should have known that the representations that it made to CDH concerning the Account, the Second Disbursement, and the Debt were false at the time they made them, made the misrepresentations without knowledge as to their truth or falsity, or made the misrepresentations under circumstances in which Defendants should have known of their falsity, with the intent to induce CDH to rely and act on these misrepresentations.

171.     Defendants knew or should have known the impact of their representations on CDH.

172.     CDH justifiably relied upon Defendants' misrepresentations.

173.     As a direct and proximate result of CDH's reliance on Defendants' misrepresentations, CDH suffered damages.

174.     Defendants' negligent misrepresentations were the direct and proximate result of CDH's injuries.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT VIII – AIDING AND ABETTING FRAUD
### Plaintiff v. All Defendants

175.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

176.   As described above, Defendants made numerous fraudulent misrepresentations to CDH.

177.   The Individual Defendants knew of these fraudulent misrepresentations and omissions and in fact participated in their making.

178.   The Individual Defendants' substantial assistance and encouragement of SixUp to effectuate the fraudulent conduct with regard to the Account, the Second Disbursement, and the Debt included, but was not limited to, failing to advise CDH that the money for the Second Disbursement was not in the Account and making multiple false statements regarding SixUp's intention and ability to repay the Debt.

179.   As a result of the Individual Defendants' aiding and abetting of SixUp's scheme, CDH suffered damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## COUNT IX – CIVIL CONSPIRACY
### Plaintiff v. All Defendants

180.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

181.   As set forth above, Defendants acted in concert and with a common design to unlawfully defraud CDH, intentionally provide CDH with false and misleading information, and/or unlawfully withhold from CDH highly relevant information, in breach of their duties to CDH, regarding the Account, the Loan, the Second Disbursement, and the Debt.

182.     As a direct and proximate result of Defendants' conspiracy and its resulting tortious conduct, CDH has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

### COUNT X – IMPOSITION OF CONSTRUCTIVE TRUST, EQUITABLE ACCOUNTING, AND OTHER EQUITABLE RELIEF
### Plaintiff v. All Defendants

183.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

184.     SixUp has retained an asset, namely the Second Disbursement, which belongs to CDH, through various acts of fraud perpetrated by all Defendants.

185.     Upon information and belief, SixUp has applied the Second Disbursement to reduce or pay off other debts and have converted the Second Disbursement to its own use and have expended for its own uses and purposes or otherwise dissipated all or substantially all of the Second Disbursement.

186.     Defendants would be unjustly enriched if they were permitted to retain the Second Disbursement via their various acts of wrongdoing.

187.     In equity and good conscience, SixUp ought not to retain the Second Disbursement, which it has retained by means of fraud and misrepresentation.

188.     A constructive trust is necessary to preserve and protect the property of CDH, and prevent SixUp from utilizing or disposing of this property.

189.    The property over which CDH seeks the imposition of a constructive trust is readily identifiable, namely, the Second Disbursement.

190.    Further, a result of Defendants' actions, namely the retention, diversion, and/or transfer the Second Disbursement away from CDH, it is believed that an accounting is necessary to comprehensively identify such conduct and locate the Second Disbursement.

191.    By reason of the foregoing facts, an accounting is necessary of all transactions relative to the Loan, the Second Disbursement, and the Account, from June 2019 through the present, in order to determine the exact nature and amount of funds that were wrongfully withheld from CDH as a result of Defendants' fraud and related misconduct.

192.    The only way to determine the full extent of Defendants' diversion of the Second Disbursement is to require Defendants to account for all the money flowing into and out of the Account since June 2019.

193.    CDH is without an adequate remedy at law and is entitled to an equitable accounting of assets and monies unjustly diverted and/or retained by Defendants, an imposition of a constructive trust on the identifiable funds in the possession of Defendants that in equity and good conscience should be transferred to CDH, an order that Defendants disgorge the Second Disbursement unjustly paid retained by them, equitable restitution by mandatory injunction directing Defendants to pay over funds unjustly retained by Defendants, and such further equitable relief that this Court deems just.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants in excess of $75,000, consequential damages, incidental damages, an accounting, imposition of a constructive trust, plus interest, fees, costs, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that judgment be entered against Defendants and relief be granted as follows:

(a)     compensatory damages;

(b)     consequential damages;

(c)     incidental damages;

(d)     prejudgment interest thereon;

(e)     an accounting

(f)     imposition of a constructive trust;

(g)     attorneys' fees and costs of suit; and

(h)     such other and further relief that the Court deems equitable and just under circumstances.

Respectfully submitted,

Dated: August 3, 2020                              **Royer Cooper Cohen Braunfeld LLC**

By: */s/ Matthew Faranda-Diedrich*
Matthew Faranda-Diedrich, Esquire
mfd@rccblaw.com
Jessica Itzkowitz, Esquire
jitzkowitz@rccblaw.com
Two Logan Square
100 N. 18th St., Suite 710
Philadelphia, PA 19103
T: (484) 362-2631
F: (484) 362-2630
*Attorneys for Plaintiff*